FREDERICK C. BAUBY vs. ANNIE KRASOW ET ALS.

Third Judicial District, Bridgeport, October Term, 1927.

WHEELER, C. J., HAINES, HINMAN, BANKS and FOSTER, Js.

If a convenant restricting the use of real estate runs with the land, it is binding upon a grantee whether he has knowledge of it or not, but if it does not run with the land, he is bound only if he takes with notice of its existence.

The enforcement of a covenant not running with the land rests not upon the theory that an easement is thereby created, but upon the principle that one who has knowledge of the just rights of another shall not be permitted to defeat them.

When the owner of two adjoining lots conveys one of them subject to a restrictive covenant, and retains the other, the question whether a subsequent purchaser of such other lot may enforce the restriction as one made for the benefit of the land rather than for the mere personal advantage of the original owner, depends upon the intention of the parties as it is disclosed in the language of the covenant, the nature of the restriction and all the circumstances surrounding the transaction.

A defendant who has wrongfully invaded the rights of a plaintiff in real property will ordinarily be compelled by mandatory injunction to restore such property to its original condition, whatever the cost; but if the defendant's conduct, being neither wilful nor inexcusable, was the result of an innocent mistake or arose out of a bona fide claim of right on his part or laches on the part of the plaintiff, and if the granting of a mandatory injunction would result in a loss to the defendant disproportionate to the plaintiff's injury, for which money damages will be adequate compensation, such extraordinary relief may be refused.

Bauby v. Krasow.

The original owner of two adjoining lots of land, upon one of which was her homestead, and the other of which was vacant, conveyed the latter to the defendant's grantor by deed containing a covenant, of which the defendant had actual notice, reciting that "the grantee agrees that in the event she shall erect a house on said property that same will be a single family house." After the death of the original owner and after the plaintiff had acquired the homestead, the defendant commenced the construction of a three-family house upon the vacant lot, having completed the cellar and a portion of the frame when the present action was brought, and having, in the absence of a request by the plaintiff for a temporary injunction, proceeded thereafter with the erection of the house at a cost of $16,000 under the claim and belief that the covenant in question was personal to the original owner and not appurtenant to the plaintiff's land. *Held:*

1. That, under all the circumstances, the covenant was for the benefit of the plaintiff's land and enforceable by him against the defendant.

2. That, nevertheless, it would be inequitable to compel the defendant to remove the three-family house; and that an award of damages to the plaintiff for the resulting depreciation in the value of his property would afford him an adequate remedy.

Argued October 26th—decided December 12th, 1927.

ACTION for an injunction restraining the defendants from erecting or maintaining any structure other than a one-family house upon certain real estate in the City of Waterbury, brought to the District Court of Waterbury and tried to the court, *Makepeace, J.;* judgment for the defendants, and appeal by the plaintiff. *Error; cause remanded for assessment of damages.*

*Charles G. Root,* for the appellant (plaintiff).

*Walter E. Monagan,* with whom was *Maurice T. Healey, Jr.,* for the appellees (defendants).

BANKS, J. Minnie J. Dalton owned two adjoining lots in Waterbury, upon one of which stood a one-family dwelling-house in which she lived. She conveyed the vacant lot to Catherine McCarthy by a

Bauby *v.* Krasow.

warranty deed containing this clause: "Grantee agrees that in the event she shall erect a house on said property that same will be a single family house." Minnie Dalton continued to own and occupy this house until her death. Upon her death the administrator of her estate conveyed her house and lot to the plaintiff Bauby, who had actual knowledge of the restrictive covenant in her deed to Catherine McCarthy. Subsequently Catherine McCarthy conveyed the vacant lot to the defendant Annie Krasow by a deed warranting the same to be free of all incumbrances, but at the same time taking back from Annie Krasow an agreement whereby she agreed to save Catherine McCarthy harmless from any claim that might be made because of the restrictive covenant of which she had actual notice. Thereafter the defendant Annie Krasow commenced the construction of a three-family house upon her lot. The cellar of this house was completed and a portion of the frame up when this action was started and the house was completed before the case was tried.

The appeal from the refusal of the trial court to correct the finding is without merit. The motion to strike out the several paragraphs of the conclusions of the trial court is unnecessary. The soundness of these conclusions is properly attacked in reasons of appeal one, two and three. The other paragraphs of the finding which the appellant seeks to have stricken out were not found without evidence, and the paragraphs which the court was asked to add to the finding were either facts which were not admitted or undisputed, or were immaterial.

The trial court reached the conclusion that the clause in the deed from Minnie Dalton to Catherine McCarthy did not create an easement running with the land and was not binding upon the heirs and assigns

of the grantee. The question whether such a covenant runs with the land is material in equity only on the question of notice. If it runs with the land, it binds the owner whether he had knowledge of it or not. If it does not run with the land, the owner is bound only if he has taken the land with notice of it. In *Tulk* v. *Moxhay,* 2 Phil. Ch. 774, the leading case upon this question, the court said (p. 777): "The question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased." The decisions proceed upon the principle of preventing one having knowledge of the just rights of another from defeating such rights, and not upon the theory that the covenants enforced create easements or are of a nature to run with the land. 2 Pomeroy's Equity Jurisprudence (4th Ed.) § 689; Berry on Restrictions on Use of Real Property, p. 417; 1 Jones on Law of Real Property in Conveyancing, § 780; 2 Tiffany on Real Property (2d Ed.) § 394; 21 A. L. R. 1284; *Whitney* v. *Union Ry. Co.,* 77 Mass. (11 Gray) 359, 364; *Lewis Oyster Co.* v. *West,* 93 Conn. 518, 107 Atl. 138.

The defendant Annie Krasow, when she bought this lot, had actual knowledge that her grantor, by a covenant in her title deed, had agreed not to build other than a one-family house upon the lot. She could not equitably refuse to perform this agreement if performance were sought by Minnie Dalton, the original covenantee.

The plaintiff Bauby is the successor in title of Minnie Dalton to the adjoining house lot which she retained when she conveyed the vacant lot by the deed containing the restrictive covenant. Whether he can enforce the covenant depends upon whether it was made for the benefit of the land retained by the grantor in the

deed containing the covenant, and the answer to that question is to be sought in the intention of the parties to the covenant as expressed therein, read in the light of the circumstances attending the transaction and the object of the grant. 1 Jones on Law of Real Property in Conveyancing, § 798; 2 Tiffany on Real Property (2d Ed) § 399; Berry on Restrictions on Use of Real Property, pp. 417, 437; 21 A. L. R. 1282; *Peck* v. *Conway,* 119 Mass. 546; *Beals* v. *Case,* 138 Mass. 138; *Baker* v. *Lunde,* 96 Conn. 530, 114 Atl. 673. The great majority of cases in which these questions arise are those where uniform restrictions are inserted in deeds given in pursuance of a general scheme for the improvement and development of a tract of land. In such cases ordinarily the intent is easily ascertained by the application of the words of the deed to the surrounding circumstances. Where, as here, the owner of two adjacent lots conveys one with a restrictive covenant, retaining the other, the problem of ascertaining the intention of the parties as to the nature of the covenant is one the solution of which by the courts has been far from uniform, owing, doubtless, to the varying facts of the cases in which the question has arisen. Numerous cases involving this precise question are collected and analyzed in a note in 21 A. L. R. 1288. Upon the one hand, it is said that the law does not favor restrictions, that the burden is upon the plaintiff to 'prove that the covenant was imposed for the benefit of the land retained by the grantor and not merely for his personal benefit, and that the mere fact that the grantor retained the adjacent lot does not establish his intention to benefit it. *Lowell Institution for Savings* v. *Lowell,* 153 Mass. 532, 27 N. E. 518; *Chesebro* v. *Moers,* 233 N. Y. 75, 134 N. E. 842; *Sailor* v. *Podolski,* 82 N. J. Eq. 459, 88 Atl. 967. On the other hand, it is said that a right to enforce a restric-

tion of this kind will not be inferred to be personal
when it can fairly be construed to be appurtenant to
the land, and that it will generally be construed to
have been intended for the benefit of the land, since in
most cases it could obviously have no other purpose,
the benefit to the grantor being usually a benefit to him
as owner of the land, and that, if the adjoining land
retained by the grantor is manifestly benefited by the
restriction, it will be presumed that it was so intended.
1 Jones on Law of Real Property in Conveyancing,
§ 798; Berry on Restrictions on Use of Real Property,
p. 407; 37 L. R. A. (N. S.) 17; *Coughlin* v. *Barker,* 46
Mo. App. 54, 65; *Peck* v. *Conway,* 119 Mass. 546;
*Baker* v. *Lunde,* 96 Conn. 530, 114 Atl. 673.   In the
absence of an express statement in the covenant itself,
the intention of the parties must ordinarily be deter-
mined as a matter of fair inference from the language
of the covenant, the nature of the restriction granted
or reserved and all the circumstances surrounding the
transaction.

The language of the restrictive covenant in this deed
throws little, if any, light upon the question of whether
the intention was to benefit the land retained by the
grantor, except as it might be said that the character
of the restriction itself would indicate that its enforce-
ment would be of benefit to the retained land.   These
two lots came to Minnie Dalton as one piece by a cer-
tificate of devise from her husband's estate.   The house
upon the lot which she retained was her homestead,
in which she continued to live up to the time of her
death.   The other houses upon the same side of the
street in that neighborhood were one-family houses,
although there were some two- and three-family houses
on the other side of the street.   It is difficult to see how
Minnie Dalton would have any interest in restricting
the use of the lot sold except as owner of the property

retained by her.  The nature of the restriction indicates that it was intended for the benefit of the house lot, to prevent such depreciation in its value as might result from the erection of a three-family house upon the adjoining lot.  It seems to us that the fair inference, and the only one that could reasonably be drawn from the insertion of this restriction in the deed under the circumstances, is that its sole purpose was to protect the grantor's homestead by restricting the character of any house that might be built upon the adjoining lot.  The covenant of the vendee was that she would build no other than a one-family house upon the lot.  As we have seen, this covenant is binding upon her successor in title taking with notice.  There is nothing to indicate that the parties intended that that agreement should terminate upon the death of the covenantee.  It was manifestly intended to benefit her property and that benefit enures to her successor in title.  *Peck* v. *Conway,* 119 Mass. 546.

It does not necessarily follow that plaintiff is entitled to a mandatory injunction directing the removal of defendant's house.  Whether such an injunction should issue depends upon all the equities between the parties.  32 Corpus Juris, 147.  When one has gone on wrongfully in a wilful invasion of another's rights in real property, the latter is entitled to have his property restored to its original condition even though the wrongdoer would thereby suffer great loss.  It has been said that the result of denying a mandatory injunction in such a case would be to "allow the wrongdoer to compel innocent persons to sell their rights at a valuation."  *Tucker* v. *Howard,* 128 Mass. 361, 363. Where, however, there has been an innocent mistake or a bona fide claim of right on the part of the defendant or laches on the part of the plaintiff, or where

the conduct of the defendant was not wilful and in-excusable, and where the granting of the injunction would cause damage to the defendant greatly dispro-portionate to the injury of which plaintiff complains and it appears that damages will adequately compen-sate the latter, in such cases it has been held that it would be inequitable to grant a mandatory injunction and the plaintiff has been remitted to his remedy by way of damages. 17 Halsbury's Laws of England, 213; *Starkie* v. *Richmond,* 155 Mass. 188, 29 N. E. 770; *Lynch* v. *Union Institution for Savings,* 159 Mass. 306, 34 N. E. 364; *Methodist Episcopal Soc.* v. *Akers,* 167 Mass. 560, 46 N. E. 381; *Hunter* v. *Carroll,* 64 N. H. 572, 15 Atl. 17.

It clearly appears from the finding that the purchase of the lot by the defendant Annie Krasow was made in good faith, and not for the purpose of avoiding the restriction of which she had knowledge but which she claimed was a personal covenant and not an appurte-nance to the land of the plaintiff, and that she started the erection of a three-family house upon the lot under a claim of right. After the cellar was completed and a portion of the frame was up, this action was brought. No temporary injunction was sought by the plaintiff and the defendant completed the house at a cost of about $16,000. The house does not affect the light, air or vision of the plaintiff's house to any appreciable extent more than would a one-family house. Under all the circumstances of the case it would be inequitable to require the removal of defendant's house and an adequate remedy will be afforded the plaintiff by an award of damages for the depreciation in the value of his property caused by the violation of the restric-tive covenant.

There is error and the cause is remanded to the

District Court of Waterbury for assessment of damages.

In this opinion the other judges concurred, except HINMAN and FOSTER, Js., who dissented.