IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CENTRUM FINANCIAL SERVICES, INC., a Washington Corporation, | ) ) ) | No. 75676-1-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) | |
| UNION BANK, N.A., a California chartered commercial bank; HACKER & WILLIG, INC., P.S., a Washington Professional Services Corporation, as Trustee, | ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Respondents. | ) ) | FILED: December 18, 2017 |

SCHINDLER, J. — The "Deeds of Trust Act" (DTA), chapter 61.24 RCW, defines a "grantor" as a person or its successor "who executes a deed of trust to encumber the person's interest in property as security for the performance of all or part of the borrower's obligations."[1] The DTA gives the grantor the right to cure the default on the obligation and discontinue a nonjudicial foreclosure sale. Centrum Financial Services Inc. foreclosed on property owned by Prium Development Company LLC and obtained a "Trustee's Deed." Centrum's title to the property was subject to the first position "Deed of Trust" that secured the $1,875, 000 promissory note Prium executed in favor of Frontier Bank. Centrum claims that as the current owner of the property, Centrum

---

[1] RCW 61.24.005(7).

had the right to cure the default on the promissory note between Prium and Frontier Bank, reinstate the obligation, and discontinue the bank's nonjudicial foreclosure sale. Because Centrum is not a party to the promissory note and assumed no liability, we hold Centrum did not have the right to cure the default, reinstate the promissory note, or discontinue the nonjudicial foreclosure sale. The undisputed record also establishes the bank had the right to demand payment for the full amount due on the promissory note. We affirm dismissal of Centrum's lawsuit to enjoin the trustee's sale.

Frontier Bank First Position Deed of Trust

The material facts are not in dispute. Prium Development Company LLC owned a 43,124 square-foot parcel of property with a large two-story office building in Monroe. Prium leased approximately 20,000 square feet of office space to the State.

On October 6, 2004, Frontier Bank loaned Prium $1,875,000. Prium executed a promissory note payable to Frontier Bank for $1,875,000 with interest. The promissory note identifies Prium as the "Borrower" and Frontier Bank as the "Lender." Prium agreed to pay monthly installments or "119 regular payments of $12,376.80 each" beginning November 10, 2004 and a final payment "for all principal and all accrued interest not yet paid" on October 10, 2014.

On October 20, 2004, Prium executed and recorded a Deed of Trust on the Monroe property and an assignment of rents as security for the promissory note. The Deed of Trust identifies Prium as the "Grantor" and Frontier Bank as the "Lender" and "Beneficiary" of the note. Chicago Title Insurance Company is identified as the "Trustee" for the Beneficiary. The Deed of Trust states, in pertinent part:

> CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys to Trustee in trust with power of sale, right of entry and

possession and for the benefit of Lender as Beneficiary, all of Grantor's right, title, and interest in and to the following described real property . . . located in SNOHOMISH county, State of Washington:

LOT 25, MAIN STREET VILLAGE, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 49 OF PLATS, PAGES 221 THROUGH 223, INCLUSIVE, RECORDS OF SNOHOMISH COUNTY, WASHINGTON.

The Deed of Trust also states:

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS.

The Deed of Trust includes a "Due On Sale" provision that states if the property is sold without the written consent of Lender Frontier Bank, the bank has the right to "declare immediately due and payable all sums secured by this Deed of Trust."

DUE ON SALE - CONSENT BY LENDER. Lender may, at Lender's option, (A) declare immediately due and payable all sums secured by this Deed of Trust or (B) increase the interest rate provided for in the Note or other document evidencing the indebtedness and impose such other conditions as Lender deems appropriate, upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.

The Deed of Trust also states that if Prium defaults on the promissory note, either the Lender or the Trustee has the right to accelerate the maturity of the loan, foreclose on the Monroe property, and collect rents.

RIGHTS AND REMEDIES ON DEFAULT. If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

Election of Remedies. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of

3

Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

Accelerate Indebtedness. Lender shall have the right at its option to declare the entire indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

Foreclosure. With respect to all or any part of the Real Property, the Trustee shall have the right to exercise its power of sale and to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

. . . .

Collect Rents. Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.[2]

The Deed of Trust includes a successors and assigns provision that states if the property "becomes vested in a person" other than Prium, Frontier Bank has the discretion to negotiate on "forbearance or extension" without releasing Prium from the obligations under the Deed of Trust or the promissory note.

Successors and Assigns. Subject to any limitations stated in this Deed of Trust on transfer of Grantor's Interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns.

---

[2] The Deed of Trust also states, "Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law."

> If ownership of the Property becomes vested in a person other than
> Grantor, Lender, without notice to Grantor, may deal with Grantor's
> successors with reference to this Deed of Trust and the indebtedness by
> way of forbearance or extension without releasing Grantor from the
> obligations of this Deed of Trust or liability under the indebtedness.

## Centrum Second Position Deed of Trust

Centrum Financial Services Inc. is a Washington corporation that makes "short term commercial real estate loans, secured by real property collateral." According to the Centrum chief executive officer, Centrum loans "typically have been for six months or less."

On December 7, 2006, Centrum loaned Prium $1,610,000. Prium signed a promissory note payable to Centrum. The promissory note was secured by a second position Deed of Trust on the Monroe property.

## Union Bank

After Frontier Bank failed, the Federal Deposit Insurance Corporation (FDIC) was appointed as the receiver of the bank. On April 30, 2010, the FDIC entered into a "Purchase and Assumption Agreement" with Union Bank NA. Union Bank agreed to purchase the assets and continue the banking business. The FDIC agreed to sell, assign, transfer, convey, and deliver all of the assets of Frontier Bank to Union Bank, including the Prium promissory note and the first position Deed of Trust and assignment of rents for the Monroe property.

## Default on Centrum Loan

Sometime in 2010, Prium defaulted on the Centrum loan. On October 11, 2010, Centrum commenced a nonjudicial foreclosure proceeding on the second position Deed of Trust. The Trustee issued a "Notice of Trustee Sale" for January 21, 2011.

The Deeds of Trust Act (DTA), chapter 61.24 RCW, does not require notice to the holder of the first position Deed of Trust. The DTA requires the Trustee to give notice of the nonjudicial foreclosure sale only to:

> (i) The borrower and grantor;
> (ii) The beneficiary of any deed of trust or mortgagee of any mortgage, or any person who has a lien or claim of lien against the property, that was recorded subsequent to the recordation of the deed of trust being foreclosed . . . ; [and]
>
> . . . .
>
> (iv) The last holder of record of any other lien against or interest in the property that is subject to a subordination to the deed of trust being foreclosed that was recorded before the recordation of the notice of sale.

RCW 61.24.040(1)(b).[3]

But the terms of the first position Deed of Trust Prium executed to secure the Frontier Bank loan required Prium to give notice and obtain written consent of the nonjudicial foreclosure and transfer of the property. Prium did not give notice of the nonjudicial foreclosure to Union Bank.

Centrum purchased the Monroe property at the "Trustee's Sale" for the amount Prium owed Centrum, $1,823,780.79. On January 21, 2011, the Trustee issued a Trustee's Deed to Centrum. The Trustee's Deed was subject to the first position Deed of Trust that secured the $1,875,000 Frontier Bank loan to Prium. After receiving title through the Trustee's Deed, Centrum began collecting rent from the State.

Default on Union Bank Loan

By January 10, 2011, Prium was in default on the promissory note with Frontier Bank. Prium had not been "current on its payment since December 2009" and had not paid the real property taxes in 2009, 2010, or 2011. Union Bank paid the delinquent taxes on behalf of Prium in the amount of $114,176.86. Under the terms of the Deed of

---

[3] Emphasis added.

Trust, "[A]n election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies."

On June 22, 2011, Union Bank appointed a "Successor Trustee." On July 25, the Successor Trustee issued a Notice of Trustee Sale of the Monroe property for October 28, 2011.

In September, Centrum contacted Union Bank and the Successor Trustee about "the amount required to reinstate the loan." Centrum asserted that "as the property's owner," it was "entitled to reinstate the loan by paying the delinquent payments." Centrum notes the full amount owed on the promissory note was not due until October 10, 2014.

Union Bank was not interested in entering into "a lending relationship with Centrum." Union Bank exercised its right under the terms of the Deed of Trust to demand "the entire indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay." The Successor Trustee sent an e-mail to Centrum stating, "Union Bank is only interested in a full payoff of this loan." In an October 28 e-mail from Union Bank to Centrum, Union Bank asserts it "will continue to invoke the due on sale clause."

> Regarding the reinstatement, Union Bank will continue to invoke the due on sale clause in its Deed of Trust which means that the paramount default (among multiple other defaults of the note and deed of trust), is that the borrower did not pay off the loan in full at the time of the involuntary transfer of the property.
>
> Therefore, reinstatement of the loan is not a possibility.

Centrum maintained it had the right under the DTA to pay the amount in default and "reinstate the obligation secured by the Union Bank Deed of Trust."

> Centrum is exercising its right, under RCW 61.24.090 to reinstate the Union Bank loan and is ready, willing and able immediately to pay all sums necessary to reinstate the obligation secured by the Union Bank Deed of Trust, including all past due payments, late charges, the appraisal fee and any property taxes advanced by Union Bank.[4]

On November 2, 2012, Centrum filed a lawsuit to enjoin the Trustee's Sale and for declaratory relief and damages. Centrum alleged it was entitled to reinstate the loan between Prium and Union Bank under the DTA. After the Successor Trustee issued a notice of discontinuance of the Trustee's Sale, Union Bank filed an answer and counterclaims. Union Bank sought dismissal of the lawsuit and the appointment of a receiver to conduct the nonjudicial foreclosure sale of the Monroe property.

Union Bank filed a motion for partial summary judgment. Union Bank argued as a matter of law Centrum did not have a right under the DTA to cure the default and reinstate the obligation on the promissory note between Prium and Union Bank. The vice president of Union Bank submitted a declaration in support. The declaration states, in pertinent part:

> . . . Prium defaulted on its monthly payment to Union Bank on January 10, 2011. Prium has not been current on its payment since December 2009. . . .
> . . . Both Prium and Centrum failed to pay the Note in full when the Property was transferred without prior written consent of Union Bank or Frontier Bank. When Centrum acquired title to the Property, Centrum began collecting rents derived from the Property. Centrum acknowledged that this rent belongs to Union Bank, but refused to turn over the rent unless Union Bank allowed Centrum to reinstate and assume Prium's loan. Union Bank does not want to be in a lending relationship with Centrum.
> . . . Union Bank has asked Centrum to pay the amount owed to it under the Note, and has provided a calculation of interest charges, but

---

4 Centrum sent similar letters on April 3, 2012 and October 26, 2012.

Centrum has refused to pay. Thus, in order to recover the amount due under the Note, the Property will have to be sold. Because Centrum has indicated its intent to block any attempt to foreclose on the Property, Union Bank would like the Property to be sold by the Court's agent, the Receiver.

In opposition, Centrum claimed that under the DTA, it had the right to pay the amount in default and reinstate the promissory note as the successor in title to Prium.

The court ruled as a matter of law Centrum did not have the right under the DTA to cure the default and reinstate the loan. The court entered an order granting Union Bank's motion for partial summary judgment and appointed a receiver to conduct the nonjudicial foreclosure sale. The court ruled, "[T]here is good cause to allow the Receiver to sell the Property" and the court "confers upon the Receiver the authority to sell the Property, consistent with RCW 7.60.260." After the parties stipulated to dismissal of all claims, the court dismissed the lawsuit.

RCW 61.24.090

Centrum appeals the order granting Union Bank's motion for partial summary judgment. Centrum contends the court erred in ruling that Centrum did not have the right under RCW 61.24.090 of the DTA to cure and pay the amount in default and reinstate the promissory note between Prium and Union Bank.

We review the decision on summary judgment de novo. Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794, 64 P.3d 22 (2003). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Michak, 148 Wn.2d at 794-95. Interpretation of a statute is a question of law we review de novo. City of Spokane v. Rothwell, 166 Wn.2d 872, 876, 215 P.3d 162 (2009).

9

When interpreting a statute, our objective is to ascertain and carry out legislative intent. Jametsky v. Olsen, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). Statutory interpretation begins with the statute's plain meaning. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). The "plain meaning" of a statute is discerned from the ordinary meaning of the language at issue as well as the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. Lake, 169 Wn.2d at 526. "While we look to the broader statutory context for guidance, we 'must not add words where the legislature has chosen not to include them,' and we must 'construe statutes such that all of the language is given effect.' " Lake, 169 Wn.2d at 526 (quoting Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). Where the language of a statute is clear on its face, we give effect to the plain meaning as an expression of legislative intent. In re Forfeiture of One 1970 Chevrolet Chevelle, 166 Wn.2d 834, 838, 215 P.3d 166 (2009).

We construe a statute " 'so that all the language used is given effect, with no portion rendered meaningless or superfluous.' " Rapid Settlements, Ltd. v. Symetra Life Ins. Co., 134 Wn. App. 329, 332, 139 P.3d 411 (2006) (quoting Prison Legal News, Inc. v. Dep't of Corr., 154 Wn.2d 628, 644, 115 P.3d 316 (2005)). A construction that would render a portion of a statute meaningless or superfluous should be avoided. Ford Motor Co. v. City of Seattle, Exec. Servs. Dep't, 160 Wn.2d 32, 41, 156 P.3d 185 (2007). "[W]e avoid interpretations 'that yield unlikely, absurd or strained consequences.' " Broughton Lumber Co. v. BNSF Ry., 174 Wn.2d 619, 635, 278 P.3d 173 (2012) (quoting Kilian v. Atkinson, 147 Wn.2d 16, 21, 50 P.3d 638 (2002)). "Where the language of a statute is clear, legislative intent is derived from the language of the

statute alone." Rothwell, 166 Wn.2d at 876. If the statute is unambiguous, the inquiry ends. Lake, 169 Wn.2d at 526.

The DTA governs transactions where a borrower executes a promissory note to the lender that is secured by a deed of trust. Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 92-94, 285 P.3d 34 (2012). A statutory deed of trust is a three-party transaction. The borrower is the grantor of the deed of trust and the lender is the beneficiary. Bain, 175 Wn.2d at 92-93. The trustee holds title in trust for the lender as security for a loan. Bain, 175 Wn.2d at 92-93. If the borrower defaults on the debt, the DTA authorizes a nonjudicial foreclosure sale of the property by the trustee. RCW 61.24.030; Bain, 175 Wn.2d at 93.

RCW 61.24.090(1) gives "the borrower, grantor, any guarantor, any beneficiary under a subordinate deed of trust, and any person having a subordinate lien or encumbrance of record on the trust property" the right to cure the default as set forth in the nonjudicial foreclosure sale notice and discontinue the foreclosure. RCW 61.24.090(1) provides, in pertinent part:

> At any time prior to the eleventh day before the date set by the trustee for the sale in the recorded notice of sale, or in the event the trustee continues the sale pursuant to RCW 61.24.040(6), at any time prior to the eleventh day before the actual sale, the borrower, grantor, any guarantor, any beneficiary under a subordinate deed of trust, or any person having a subordinate lien or encumbrance of record on the trust property or any part thereof, shall be entitled to cause a discontinuance of the sale proceedings by curing the default or defaults set forth in the notice, which in the case of a default by failure to pay, shall be by paying to the trustee:
>     (a) The entire amount then due under the terms of the deed of trust and the obligation secured thereby, other than such portion of the principal as would not then be due had no default occurred, and
>     (b) The expenses actually incurred by the trustee enforcing the terms of the note and deed of trust, including a reasonable trustee's fee,

11

> together with the trustee's reasonable attorney's fees, together with costs
> of recording the notice of discontinuance of notice of trustee's sale.[5]

"Upon receipt of such payment the proceedings shall be discontinued, the deed of trust shall be reinstated and the obligation shall remain." RCW 61.24.090(3).

Under the plain and unambiguous language of RCW 61.24.090(1), only the borrower, grantor, guarantor, any beneficiary under a subordinate deed of trust, or any person having a subordinate lien or encumbrance has the right to cure the default as set forth in the notice, discontinue the nonjudicial foreclosure sale, and reinstate the deed of trust and the obligation.

Here, Centrum is not the borrower or a guarantor under the DTA because the undisputed record established the promissory note is between only Prium and Frontier Bank.[6] Centrum concedes that after obtaining a Trustee's Deed "subject to the first Deed of Trust held by . . . Union Bank," Centrum was no longer a beneficiary under a subordinate deed of trust. We accept the concession. Under the DTA, the Trustee's Deed conveys only "the right, title, and interest" in the property sold at the nonjudicial foreclosure sale. RCW 61.24.050(1).

> Upon physical delivery of the trustee's deed to the purchaser, . . . the
> trustee's deed shall convey all of the right, title, and interest in the real and
> personal property sold at the trustee's sale which the grantor had or had
> the power to convey at the time of the execution of the deed of trust.

RCW 61.24.050(1). The effect of the nonjudicial foreclosure on Centrum's Deed of Trust was to extinguish the debt Prium owed Centrum and transfer title subject to the

---

[5] Emphasis added.

[6] For the first time on appeal, Centrum contends it has an encumbrance of record and an equitable subordinate lien on the Monroe property. Under RAP 9.12, an appellate court will consider only the evidence and issues called to the attention of the trial court. Kofmehl v. Baseline Lake, LLC, 177 Wn.2d 584, 594, 305 P.3d 230 (2013). For the first time in its reply brief, Centrum also argues the lease with the State "contemplate[s] that lease being binding upon successors, i.e. the subsequent owner." "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

first position Deed of Trust on the Monroe property.  Beal Bank, SSB v. Sarich, 161 Wn.2d 544, 548, 167 P.3d 555 (2007).

Centrum relies on the definition of "grantor" to argue it has the right to pay only the amount in default and to reinstate the obligation between Prium and Union Bank.  It is an axiom of statutory interpretation that where a term is defined, we will use that definition.  United States v. Hoffman, 154 Wn.2d 730, 741, 116 P.3d 999 (2005).

Whether Centrum had the right to cure the default and reinstate the loan turns on whether Centrum is a "successor" to the "grantor" as defined by RCW 61.24.005(7).  RCW 61.24.005(7) defines "grantor" as follows:

> "Grantor" means a person, or its successors, who executes a deed of trust to encumber the person's interest in property as security for the performance of all or part of the borrower's obligations.

Centrum contends that by obtaining title to the property following the nonjudicial foreclosure on the second position Deed of Trust, Centrum became the successor to the rights of Prium as the grantor.  We disagree.

The plain and unambiguous language of RCW 61.24.005(7) defines a "grantor" or "its successor" as a person "who executes a deed of trust to encumber the person's interest in property as security for the performance of all or part of the borrower's obligations."  Under RCW 61.24.005(7), a successor to the grantor must assume all or part of the borrower's obligation.  See also Fluke Capital & Mgmt. Servs. Co. v. Richmond, 106 Wn.2d 614, 622, 724 P.2d 356 (1986) (Absent assumption of the debt, the owner of land subject to a mortgage is not personally liable for the debt underlying the mortgage.).

The undisputed record establishes Centrum was never obligated to pay on the promissory note and did not assume any liability for the obligation between Prium and Frontier Bank. Centrum was not a party to the promissory note between Prium and Frontier Bank and did not execute a deed of trust to secure that loan. Union Bank was not interested in entering into an agreement to allow Centrum to assume the obligation of Prium under the promissory note. But Union Bank agreed Centrum could pay the full amount Prium owed on the note. Because the undisputed record establishes Centrum is not a successor to the grantor as defined by RCW 61.24.005(7), Centrum did not have the right to cure the default, reinstate the loan, and discontinue the nonjudicial foreclosure sale.

The cases Centrum cites are inapposite. In One Pacific Towers Homeowners' Association v. HAL Real Estate Investments, Inc., 108 Wn. App. 330, 338-46, 30 P.3d 504 (2001), the court addressed the meaning of the phrase "succeeds to" as used in the Condominium Act, chapter 64.34 RCW.[7] In Fidelity Mutual Savings Bank v. Mark, 112 Wn.2d 47, 53, 767 P.2d 1382 (1989), the Supreme Court concluded that a person is not a "successor in interest" to a judgment debtor's right of redemption where the "assignment of interest" was not recorded. In Stewart v. Beghtel, 38 Wn.2d 870, 875, 234 P.2d 484 (1951), the Supreme Court held a person was not a successor under a deed of trust where the person did not have a property interest. And in Lakewood Racquet Club, Inc. v. Jensen, 156 Wn. App. 215, 228, 232 P.3d 1147 (2010), we held that a coventee's heirs could not enforce a restrictive covenant because the heirs no longer had an ownership interest in the property. Centrum also argues public policy favors allowing a person with a financial interest in real property the right to cure a

---

[7] Former RCW 64.34.020(13)(b) (1992).

14

default and discontinue a foreclosure sale.  Public policy arguments are best left to the legislature, not the courts.  <u>Doe v. Wash. State Patrol</u>, 185 Wn.2d 363, 384, 374 P.3d 63 (2016).

We hold Centrum did not have the right to cure and reinstate the loan between Prium and Union Bank under RCW 61.24.090.  In addition, the undisputed record establishes Union Bank had the unequivocal right under the Deed of Trust Due On Sale clause to demand payment of the full amount due.

We affirm dismissal of Centrum's lawsuit to enjoin the Trustee's Sale.

WE CONCUR: